IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL CHAVEZ,

   Plaintiff,

   v.                                                         CIV No. 15-171 JCH/SCY

CITY OF FARMINGTON, *et al*,

   Defendants.

### ORDER

THIS MATTER is before the Court on Plaintiff's Expedited Motion for Protective Order and to Modify Subpoena (*doc. 39*) and City Defendants' Motion for Reconsideration of the Court's Order Denying City Defendants' Motion to Compel Production or Inspection of Documents Subpoenaed from the Corrections Department (*doc. 52*).

**I.   BACKGROUND**

Plaintiff Michael Chavez brings this action under 28 U.S.C. § 1983 and state law, alleging civil rights violations and torts claims against Defendants regarding the events of March 22, 2014. *See generally doc. 1*. On that day, Plaintiff was a passenger in a vehicle that Defendant Blea, a police officer, attempted to stop for a traffic violation. *Id.* ¶¶ 17-21. Plaintiff fled the scene of the traffic stop and Defendant Blea gave chase, which culminated in Defendant Blea shooting Plaintiff three times because he believed Plaintiff was armed. *Id.* ¶¶ 22, 28, 43-45. Defendant Monfils, a fellow officer who had arrived on the scene to assist Defendant Blea, thereafter determined that Plaintiff was not armed but holding a cellphone. *Id.* ¶¶ 24-26, 47-48. Defendants Blea and Monfils then again confronted Plaintiff, who surrendered. *Id.* ¶¶ 49-50.

1

Plaintiff suffered gunshot wounds to his left flank, right foot, and left elbow. *Id.* ¶¶ 54-57. Plaintiff is currently incarcerated in New Mexico. *Doc. 41* at 2, Ex. A.

On July 14, 2015, Defendants propounded a subpoena duces tecum to the New Mexico Department of Corrections (NMDC) seeking certain records concerning Plaintiff. *Doc. 39*, Ex. A. Specifically, the subpoena seeks:

> "[A]ny investigations, reports or other documents containing confidential information, pre-sentence reports, pre-parole reports, or supervision history, admissions summaries or progress reports, police reports, FBI criminal history sheets, escape flyers, enemy alert cards, documents regarding visitors, inmate files, probation/parole files, educational files, and medical/mental health records."

*Id.* The subpoena required compliance by August 14, 2015. *Id.* Plaintiff filed his motion to quash (styled as a "Motion for Protective Order and to Modify Subpoena") on July 16, 2015, contending that the subpoena should be quashed as to all documents except Plaintiff's medical records because the documents requested are privileged under New Mexico law. *See generally doc. 39*. On July 17, 2015, City Defendants filed an anticipatory motion to compel NMDC to comply with the subpoena, acknowledging that NMDC had not yet communicated any indication of noncompliance but seeking the Court to require compliance in any case because "[b]ased upon past experience, City Defendants believe that NMDC will object to the production of these records." *Id.* at 4; *see also doc. 52* at 2. The Court summarily denied City Defendants' motion on July 27, 2015 as premature, and invited the City Defendants to re-file the motion if and when NMDC actually objected to the subpoena. *Doc. 47*. On July 29, 2015, NMDC filed a response to City Defendants' defunct motion to compel that encompassed both its response to the motion and its objections to the subpoena. *Doc. 51*. In response to this filing, City Defendants filed their motion to reconsider, requesting that the Court reverse its prior determination of prematurity and compel the production of the documents they requested. *Doc. 52*.

The procedural posture of this case is unusual. Normally, the nonparty witness receiving the subpoena has the option of either (1) filing a motion to quash the subpoena with the court, or (2) serving the party who issued the subpoena with written objections. Fed.R.Civ.P. 45 (d)(2)(B), (d)(3). But here, City Defendants launched a preemptive strike that deprived NMDC of electing its preferred method to contest the subpoena under Rule 45. Nonetheless, for the sake of expediency and efficiency, the Court will construe City Defendants' motion to reconsider as a motion to reinstate the prior motion to compel.[1]

## II.   FEDERAL PRIVILEGE LAW APPLIES TO THE SUBPOENA

Plaintiff asserts that the documents (other than medical records) held by NMDC are privileged social records under the New Mexico Probation and Parole Act, NMSA 1978 § 31-21-1 *et seq.* (PPA). *Doc. 39* at 3. Defendants respond that (1) investigative reports, inmate case management records, and inmate educational records are not social records under the PPA, (2) most of records requested are public records available under the New Mexico Inspection of Public Records Act, NMSA 1978, § 14-2-1 *et seq*. (IPRA); and (3) while Defendants agree that presentence reports, pre-parole reports and parole or probation supervision histories are privileged under the PPA, the ends of justice require here that they be disclosed. *Doc. 41* at 11-14, *doc. 46* at 3-4. Although Defendants do not agree with Plaintiff's privilege arguments, they

---

[1] If the Court were to treat City Defendants' motion as a motion for reconsideration, it would deny that motion. City Defendants properly state that reconsideration is appropriate where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015) (citations omitted). Of these grounds, only clear error could apply to the instant situation. Given that the City Defendants admitted both in their original motion to compel and in their motion for reconsideration that they sought to compel NMDC to respond to the subpoena *before* the compliance date had passed, the Court did not err in summarily denying the City Defendants' motion. The Court's July 27, 2015 order permitted Defendants to re-file their motion to compel if and when NMDC stated it would not comply with the subpoena. Thus, Defendants' motion to reconsider should have been a re-filed motion to compel.

3

concede that Plaintiff has standing to challenge the third party subpoena issued to NMDC. *Doc. 46* at 2.

The Court is required to quash a subpoena that will result in "disclosure of privileged or other protected matter [where] no exception or waiver applies." Fed.R.Civ.P. 45(d)(3)(A)(iii). The moving party bears the burden of demonstrating that production of the documents sought will invade a specific privilege. *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997). Even where a document is not privileged, a Court may, after balancing one party's interests against another party's need for the information, limit discovery. *See Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002)

Before determining whether the information Defendants seek is privileged, the Court must determine which privilege law it should apply. Federal Rule of Evidence 501 states that a federal court looks to state law to determine the applicability of privileges "with respect to an element of a claim or defense as to which State law supplies the rule of decision," while in federal-question cases, the court looks to "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501; *see Motley v. Marathon Oil Co*., 71 F.3d 1547, 1551 (10th Cir. 1995).

This case presents both federal and state law issues, and the discovery sought for both sets of claims is co-extensive.  Because the application of federal privilege law would permit the disclosure of information state privilege law would protect, the Court cannot logically apply federal law to the federal claims and state law to the state claims.  It would be nonsensical to prohibit, as privileged, the disclosure of information requested in connection with the state law claims, but then order production of the same information in connection with the federal claims.

4

The Tenth Circuit has previously explained that "with both federal claims and pendent state law claims implicated, we should consider both bodies of [privilege] law" but where a conflict exists between the two bodies, "an analytical solution must be worked out to accommodate the conflicting policies embodied in the state and federal privilege law." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1369 (10th Cir. 1997).  Because the Court in *Sprague* held no such conflict existed, however, it did not explicitly address how it would structure such an analytical solution. It did note, however, that other Circuits addressing the issue have held that, in cases of conflict, federal privilege law applies. *Sprague*, 129 F.3d at 1369 n.7 (setting forth how the Second, Third, Sixth, Seventh, Eighth, and Eleventh Circuits had approached the question of applying federal or state privilege law in cases involving both state and federal claims.)  Consistent with these Circuits and the Tenth Circuit's indication that it would follow suit, this Court holds that federal, not state, privilege law controls the matter before the Court.

### III.    RULINGS ON SPECIFIC INFORMATION SOUGHT

#### A. Plaintiff's Assertion of Privilege

With respect to Plaintiff's arguments, Plaintiff generally fails to explain why (a) the documents are protected under a federal privilege; (b) there is no conflict between state and federal privilege law and state privilege law should inform the protection of the documents here; or (c) the documents requested do not pertain to Plaintiff's federal claims and therefore only state privilege law should apply.  As a result, Plaintiff has failed to meet his burden of demonstrating that he has a privilege in the documents sought. With regard to most categories of information requested, Plaintiff argues the information sought should be considered "social records" that that the PPA protects as privileged.  *Doc. 53* at 1-3.  For several reasons, the Court rejects this argument.  First, to the extent information is sought in connection with both Plaintiff's federal

5

and state law claims, federal, not state, privilege law applies.[2] Because the PPA does not apply to Plaintiff's federal claims, it fails to absolutely protect the disclosure of this information as Plaintiff asserts. Second, even if the PPA did apply, and even assuming that it gives *someone* a privilege, it is not clear that Plaintiff holds this privilege. The documents in question are prepared by government entities (or those exercising delegated government authority), for government use and, while Plaintiff may have a privacy interest in these documents, Plaintiff likely cannot assert a valid privilege interest in documents he has neither created nor controlled and do not necessarily involve a communication in which he took part. Third, to the extent Plaintiff has a privacy interest in certain documents, a protective order can be used to limit the disbursement of this information.

B.   **Objections to the Subpoena**

Both Plaintiff and NMDC resist the production of certain documents City Defendants request. The Court's rulings with regard to specific categories of documents are as follows:

*1.   Records of correctional investigations or reports and inmate file records*

NMDC considers this category of documents to include, for example, "incident reports, enemy alert cards, admission summary, [and] progress reports" and not to include certain probation and parole-related records discussed below. *Doc. 51* at 5-6. NMDC does not object to producing these documents.

Plaintiff points out that enemy alert cards are kept confidential, even to a prisoner requesting to see his own enemy alert card. *Doc. 53* at 2. Weighing against disclosure of this

---

[2] The parties assume the PPA protects information pursuant to a "privilege." While there is no dispute that the PPA intends to protect certain information, whether this protection is pursuant to a "privilege" is open to debate. Given that no one has argued that documents under purview of the PPA are not actually privileged, however, the Court will assume for purposes of argument that the PPA protects information under its purview pursuant to a state law privilege.

information is the slight chance that information on these cards would lead to the discovery of admissible evidence. This balance weighs in favor of nondisclosure and, therefore, the Court will not order the disclosure of enemy alert cards.

In contrast to enemy alert cards, incident reports and other correctional investigation materials are more likely to contain information that could lead to admissible evidence. For instance, a report that Defendant engaged in some sort of physical action could be relevant to a preexisting condition or, if occurring after March 22, 2014, to the authenticity of his claimed physical limitations.

Admissions summaries and progress reports also create less of a concern than enemy alert cards. These documents are less likely to contain sensitive information and more likely to lead to the discovery of admissible evidence. Therefore, with the exception of enemy alert cards, the Court orders NMDC to disclose documents requested in this category.

   2.   *Records of visitor files*

NMDC does not object to producing these documents. Plaintiff argues that visitor logs should not be disclosed because they contain private information about relationships and should be classified as social records under the PPA. *Doc. 53* at 3. For the reasons outlined above, the Court finds Plaintiff's invocation of the PPA unpersuasive. Further, the Court believes this information is reasonably calculated to lead to the discovery of admissible evidence, particularly with regard to damages. Thus, the Court orders NMDC to disclose the documents requested in this category.

   3.   *Law Enforcement Records*

7

NMDC considers this category of documents to include "original records of incidents that have been reported to a law enforcement agency and are organized chronologically (*e.g.*, police blotters and offense reports, FBI criminal history or "rap sheets", escape flyers)." *Doc. 51* at 6. NMDC does not object to producing escape flyers and states that there are no police blotters in Plaintiff's NMDC inmate file. The Court orders NMDC to produce escape flyers.

NMDC objects to producing Plaintiff's National Crime Information Center (NCIC)/FBI generated criminal history, noting that these records are generally kept confidential under 28 U.S.C. § 534. *Doc. 51* at 7; *see United States Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 757-758, 780 (1989). The Court agrees, and notes that Defendants have not demonstrated they have a "compelling necessity" for these documents merely by arguing that IPRA would not prevent their disclosure. *See Menard v. Mitchell*, 328 F.Supp. 718, 726 (D.D.C. 1971) (arrest records collected pursuant to 28 U.S.C. § 534 cannot be disseminated for purposes other than the coordination of law enforcement activities absent compelling necessity). The Court will not order the disclosure of these records.

NMDC also objects to producing any police reports in its possession on the basis that City Defendants should be required to get those records from the police department or agency that produced them. For this proposition, they rely on NMSA 1978 § 29-10-6 (A), which allows individuals to seek their own arrest records directly from the relevant law enforcement agency. This statute does not, however, address NMDC's duty to comply with subpoenas propounded under Rule 45. Rather, the issue for this Court is whether NMDC has "the legal right, authority, or practical ability to obtain the materials sought upon demand." *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000). Given that the police reports at issue are in Plaintiff's inmate file, they are within the practical ability of NMDC to produce and the Court orders

8

NMDC to disclose them.  Because NMDC is not a party to this lawsuit, however, Defendants must reimburse NMDC for the reasonable cost of producing these documents.  Further, to the extent these reports contain information considered confidential, such as identifying individuals cooperating with law enforcement, NMDC may submit these documents to the Court for *in camera* review.

    4.    *Educational Records*

NMDC does not object to producing these documents.  Plaintiff argues that these records "almost certainly contain highly sensitive information", are social records, and privileged.  The Court disagrees.  Even though Plaintiff represents that he is not seeking damages for lost wages (*doc. 53* at 5, n.3), information in these records is reasonably calculated to lead to the discovery of admissible evidence.  Further, the Court disagrees that these documents are likely to contain highly sensitive information and, for the reasons articulated above, finds that they are not protected by any privilege.  The Court therefore orders their production.

    5.    *Probation and Parole Records*

NMDC agrees to produce portions of Plaintiff's probation and parole file, "which generally include copies of judgment and sentences, orders of probation and parole, intake forms, travel permits, work pay stubs, acknowledgement of probation/parole rules of conducts, letters from counselors or service providers, court dockets, divorce and child support pleadings, jail release documents, community corrections behavioral contract, special programs referral, exit forms and drug test results." *Doc. 51* at 8. NMDC objects to the production of Plaintiff's pre-sentence reports, pre-parole reports, and supervision histories while on probation/parole both because the PPA prevents their disclosure and because NMDC contends that City Defendants have not demonstrated that these documents are relevant.

Further, Plaintiff contends that federal law recognizes the confidentiality of such reports, relying on *Beller ex rel Beller v. United States*, 221 F.R.D. 674, 678 (D.N.M. 2003), in which this Court quashed a subpoena seeking the disclosure of a federal presentence report on the basis that the party requesting it had not shown "compelling necessity." Defendants respond that the pre-sentence report, while confidential under federal law, is not privileged under federal law and that the confidentiality may be breached if the interests of justice so required. *Doc. 41* at 14-16. As to their need for these documents, Defendants assert that because Plaintiff has been incarcerated at NMDC for a large part of his adult life, "[NMDC's] records . . . will be integral in establishing Plaintiff's damages claims . . . Plaintiff's presentence reports . . .will also include information that was collected from interviews with Plaintiff himself. . . that document Plaintiff's own assessments of any physical or mental handicaps that he might have suffered from prior to the shooting." *Doc. 41* at 16.

Unlike in *Beller*, the pre-sentence reports at issue here are state pre-sentence reports. Nonetheless, the Court is unaware of any reason that state pre-sentence reports should be considered less confidential than federal pre-sentence reports and is not inclined to order their production absent a compelling need.  And, no compelling need exists for these reports because Defendants already have other avenues to obtain the information they represent they seek through disclosure of the presentence reports.  The Court will therefore quash Defendants' subpoena to the extent it seeks pre-sentence reports.

With regard to the pre-parole reports and parole supervision histories, a state statutory provision generally requiring the confidentiality of documents is insufficient to prevent their disclosure during a federal action. Nonetheless, the Court may place the underlying reasons for the state statute on the scale when balancing the competing interests at stake. *See Mannington*

10

*Mills*, 206 F.R.D. at 529 ("A nonparty moving to quash a subpoena, in essence, is the same as moving for a protective order that such discovery not be allowed. Therefore, this court is required to apply the balancing standards-relevance, need, *confidentiality* and harm. And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit") (emphasis added); *see also Travelers Indem. Co. v. Metropolitan Life Insur. Co.*, 228 F.R.D. 111, 113 (D.Conn. 2005) (when evaluating whether a subpoena imposes an undue burden, the court should look to "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed") (quotation and citation omitted).

Pre-parole reports and parole supervision histories are prepared in criminal cases to assist the court in making difficult decisions about the fate of a criminal defendant. To be effective, the reports must contain frank assessments and sensitive information. Routinely subjecting these reports to civil discovery could have a chilling effect on the information contained in these reports. It is at least partly for this reason that the PPA protects their confidentiality for the purposes of state law. While the Court again notes that the protection afforded by the PPA does not *require* this Court to prevent the disclosure of these documents, the Court finds that NMDC's interests in keeping these reports confidential easily outweighs Defendants' need for the information in the reports. Therefore, the Court will not order NMCD produce them.

    6.    *Medical and Mental Health Records*

As discussed above, Plaintiff has signed releases for these records, and NMDC has no objection to releasing them provided they are given these releases. The Court therefore orders

NMDC to produce information in this category to the extent it has obtained the appropriate release from Plaintiff.

The Court further grants NMDC's request to redact all personal identifier information and personal home addresses and phone numbers of Plaintiff, a family member, visitor or any other person contained within these records from any documents the Court has ordered to be released to the parties, except for those documents covered by Plaintiff's medical and mental health record releases. The parties shall provide a stipulated confidentiality order covering the records in this order prior to their release by NMDC. *Mannington Mills*, 206 F.R.D. at 529.

## III.  CONCLUSION

Therefore, the Court hereby orders the following:

1. Plaintiff's motion to quash (*doc. 39*) is DENIED in part and GRANTED in part. Plaintiff's request to quash the portion of the subpoena that seeks Plaintiff's probation and parole records (as defined above in section III(B)(5)) and enemy alert cards is GRANTED. Plaintiff's motion to quash is otherwise DENIED.

2. City Defendants' motion for reconsideration (*doc. 52*) is construed as a motion to reinstate its motion to compel (*doc. 41*) and the motion to reinstate is GRANTED.

3. City Defendants' motion to compel (*doc. 41*) is DENIED in party and GRANTED in part. Third party NMDC is ordered to disclose all documents to which they did not object, with the exception of the enemy alert cards, contained in Plaintiff's inmate folder. Third party NMDC is not required to disclose Plaintiff's NCIC documents, enemy alert cards, or Plaintiff's pre-sentence reports, pre-parole reports, or parole supervision histories. Any police reports that NMDC believes should be submitted to the Court for in camera review prior to disclosure must be provided by **September 9, 2015**. Defendants are required to reimburse NMDC for reasonable costs associated with the production of any police reports they provide.

4. The parties shall provide a stipulated confidentiality order covering the records in this order prior to their release by NMDC.

**IT IS SO ORDERED.**

                                    /s/ Steven C. Yarbrough
                                  STEVEN C. YARBROUGH
                                  UNITED STATES MAGISTRATE JUDGE