IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL CHAVEZ,

    Plaintiff,

v.                                                                                                          CIV No. 15-171 JCH/SCY

CITY OF FARMINGTON, *et al*,

    Defendants.

## ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Compel Officer Chris Blea's Psychological, Polygraph, and Physical Test Materials and Results. (ECF No. 68). Having reviewed the Motion and accompanying briefing and being otherwise fully advised, the Court grants Plaintiff's motion in part and denies it in part, as set forth below.

### I.   Background

This case arises from events that occurred during a traffic stop of a vehicle by Officer Blea in which Plaintiff was a passenger. (ECF No. 1 at 3). Plaintiff fled the vehicle during the stop and Officers Blea and Monfils gave chase. (ECF No. 1 at 3-4). Plaintiff alleges that Officer Blea shot Plaintiff from behind during the pursuit. (ECF No. 1 at 5). Plaintiff further alleges that Officer Monfils fired his weapon at Plaintiff during the incident. (ECF No. 1 at 5).

Plaintiff initially sought to compel psychological, polygraph, and physical test materials and results related only to Officer Blea. (ECF No. 68 at 1). In further discussions with Defendants, however, Plaintiff sought similar records related to Officer Monfils. (ECF No. 78 at

1

1). On November 2, 2015, Defendants[1] delivered a privilege log and mental health and polygraph records for Officers Blea and Monfils for an in camera review. Defendants also provided objections to producing Officer Blea's non-mental health medical records although Defendants did not submit the accompanying documents for in camera review.

Defendants' privilege log indicates that they are willing to turn over polygraph material related to Officers Blea and Monfils, but only subject to a protective order. Plaintiff has agreed to obtaining this material subject to a protective order, but makes clear that he maintains his objection to being constrained by a protective order and asks the Court to determine whether disclosure must continue to be subject to a protective order. For the reasons stated in this Order, the Court finds that the polygraph material must continue to be subject to a protective order. Further, although, Defendants indicate they have provided this material to Plaintiff, Plaintiff represents that he has not received it. Because the polygraph material in question is not voluminous, rather than resolving whether Defendants have already disclosed this material, the Court orders Defendants to provide (or to re-provide) this material to Plaintiff.

With regard to mental health records, Defendants' privilege log indicates that they will not produce this material absent an order from the Court. For the reasons stated in this Order, the Court orders Defendants to produce the material subject to a protective order.

Although Defendants did not submit documents related to Officer Blea's physical test materials to the Court, Defendants represented in their Response that they refuse to produce this material absent a Court order. (ECF 74 at 3-7). Given that Plaintiff addresses Defendants' assertion of the physician-patient privilege in his Reply, the Court assumes that Defendants

---

[1] Although Plaintiff's initial motion to compel related only to Defendant Blea, the arguments have expanded to involve the remaining Defendants. Consistent with the briefs, the Court will assume all Defendants are unified in their arguments and refer to Defendants together rather than separately.

2

continue to resist disclosure of this information. For the reasons stated in this Order, the Court denies Plaintiff's motion to compel production of this material.

## II. Analysis

### A. Mental Health Records

The mental health records Defendants submitted in camera consist of pre-employment psychological evaluations conducted to determine a candidate's suitability to serve as a law enforcement officer. Defendants object to the production of the mental health records on the basis of the psychotherapist-patient privilege and the Officers' rights to privacy. In support of their privilege argument, Defendants rely on *Jaffee v. Redmond*, 518 U.S. 1 (1996).

In *Jaffee*, the United States Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501[.]" *Id.* at 15. "Since *Jaffee*, federal courts have generally held that mental health records must be protected from discovery unless it can be demonstrated that the patient has no reasonable expectation that the communications will remain private." *Estate of Turnbow v. Ogden City*, 254 F.R.D. 434, 437 (D. Utah 2008). *See also James v. Harris Cnty.*, 237 F.R.D. 606, 611-12 (S.D. Tex. 2006) (stating that the "determinative factor [in] assessing the existence of a psychotherapist-patient privilege is whether [the] officer had a reasonable expectation of confidentiality relating to the…counseling session or evaluation."). Thus, where the officer knows or has reason to know that the therapist will communicate information learned from the therapy session to his or her employer, the privilege does not apply. *See Turnbow*, 254 F.R.D. at 437-38 (concluding that the officer did not have a reasonable expectation that communications made with the therapist were confidential where the officer knew his evaluation would be disclosed to the police department as part of the application

3

process); *Barrett v. Vojtas*, 182 F.R.D. 177, 181 (W.D. Pa. 1998) ("A police officer who is ordered to therapy, knowing that the therapist will report back to his or her superior, would have no expectation that his or her conversation was confidential.").

Based on the Court's review of the psychological evaluations provided by Defendants, the Court concludes that the psychotherapist-patient privilege does not protect these records from disclosure. Both Officers signed authorizations to release the psychological examination reports to the Farmington Police Department and the New Mexico Department of Public Safety Training Center. Defendants' argument that the Officers "reasonably believed that the results of the psychological examinations would only be shared with [their] employer, not the public at large" does not change this conclusion. (ECF No. 74 at 14). An officer's belief that results of a psychological evaluation would only be disclosed to his or her employer and not the general public bears on the officer's privacy interest and whether a protective order is appropriate. This belief, however, does not preserve the privilege – once the communication is disclosed outside the "magic circle" of persons to whom the privilege applies, the privilege is destroyed. *See U.S. v. Mass. Inst. of Tech.*, 129 F.3d 681, 684 (5th Cir. 1997) ("where the client chooses to share communications outside this magic circle, the courts have usually refused to extend the privilege."); *see also, Turnbow*, 254 F.R.D. at 437-38. (officer's knowledge that communications made to a therapist would be disclosed to the officer's employer is sufficient to render the privilege inapplicable).

As to the Officers' rights to privacy, the Court agrees that medical records, including mental health records, are entitled to privacy protections. *See Lankford v. City of Hobart*, 27 F.3d 477, 479 (10th Cir. 1994) (stating that "there is no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of

4

materials entitled to privacy protection" (internal quotation marks and citation omitted)). The fact, however, that a discovery request may invade privacy rights does not itself preclude disclosure. *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 196-97 (D. Kan. 1996). In most cases, a protective order is sufficient to assuage the privacy concerns. *Id.* Accordingly, the Court will enter a protective order to remedy any confidentiality concerns raised by disclosure of the Officers' mental health records.

### B. Non-Mental Health Medical Records

Plaintiff requested Officer Blea's non-mental health medical records in Defendants' possession. Defendants did not provide these documents to the Court for in camera review. However, in briefing, Defendants included objections and argument to the production of Officer Blea's medical records. Defendants argue that production of these documents violates Officer Blea's right to privacy and that the documents are protected from disclosure by the physician-patient privilege. (ECF No. 74 at 3-7).

The physician-patient privilege does not apply in this case. Federal privilege law applies in federal question cases with pendant state law claims where the evidence sought is relevant to both the federal and state law claims. *Vondrak v. City of Las Cruces*, 760 F.Supp.2d 1170, 1175-76 (D.N.M. 2009). "It is well settled that there is no federal common law physician-patient privilege." (internal quotation marks and citation omitted)). *Id.* at 1178. Accordingly, because this is a federal question case, Defendant cannot rely on the physician-patient privilege to withhold these documents.

Because the records are not privileged, the Court must consider whether they are relevant and, if they are, whether the "burden . . . of the proposed discovery outweighs its likely benefit . .

5

..." *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).[2]  Generally, "[w]hen the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) (citations omitted). However, "when [the] relevancy [of a discovery request] is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Id.*

Defendants argue that Officer Blea's medical records are not sufficiently relevant to overcome Officer Blea's privacy interest in his medical records.  (ECF No. 74 at 9-10).  Plaintiff, on the other hand, asserts that the medical records are relevant to discovering Officer Blea's physical conditioning at the time of the shooting. (ECF No. 68 at 7).  More specifically, Plaintiff asserts that Officer Blea's physical condition is relevant to determining whether Officer Blea chose to shoot Plaintiff because his physical conditioning made him unable to adequately engage in a foot pursuit.  (ECF No. 68 at 7).

In support of this assertion, Plaintiff relies on *Hutton v. City of Martinez*, 219 F.R.D. 164 (N.D. Cal. 2003).  The plaintiff in *Hutton* contended that whether an officer "was physically capable of performing his duties adequately and safely is relevant to whether [the officer] was trained to use less aggressive methods of force to subdue Plaintiff." *Id*. at 166.  In other words, "[i]f [the officer] was unable to pursue Plaintiff on foot, due to his back injury, he may have

---

[2]  The Court recognizes that, absent contrary Congressional action, a different version of Rule 26 will become effective December 1, 2015.  The new amendments, however, emphasize considerations of proportionality even more than the current version of Rule 26.  *See 2015 Advisory Committee Notes to Rule 26*, ("The present amendment restores the proportionality factors to their original place in defining the scope of discovery.").

decided to shoot him instead." *Id*. The Northern District Court of California agreed with Plaintiff and concluded that the officer's medical records were relevant to determining the officer's physical conditioning on the day of the shooting. *Id.* at 166-67.

The Court, however, finds Plaintiff's reference to *Hutton* unpersuasive. In *Hutton*, the officer had stated in his post-shooting statement that he was suffering from "severe back pain and neck pain." *Id.* at 165. Thus, the court held that the "information in the files could…support or contradict [the officer's] testimony that on the day of the shooting he was not suffering from any pain which would have affected his ability to pursue [p]laintiff or which would have motivated him to shoot [p]laintiff rather than chase him." *Id.* at 166-67. In the present case, Plaintiff asserted that "Officer Blea admitted during his deposition, the transcript of which is not yet available, that he could not keep up with Mr. Chavez during the foot pursuit." (ECF 68 at 3). Having the benefit of a transcript at the time it filed its response, however, Defendants refuted this contention. In the transcript provided by Defendants, Officer Blea testified that he lost sight of Plaintiff but that he ultimately believed he was gaining ground on Plaintiff during the pursuit. (ECF No. 74, Ex. A, Deposition of Officer Blea, p. 24, ll. 7-15). Officer Blea further testified that he believed he would be able to apprehend Plaintiff and place him in handcuffs, not that he feared Plaintiff was evading him. (ECF No. 74, Ex. A, Deposition of Officer Blea, p. 34, ll. 3-16). In his Reply, Plaintiff did not refute Defendants' characterization of Officer Blea's testimony. Thus, unlike *Hutton*, and contrary to Plaintiff's initial memory of Officer Blea's testimony, Officer Blea did not make statements that put his physical condition at issue. Nor did Plaintiff put Officer Blea's physical conditioning at issue in his Complaint. Given that neither Plaintiff nor Defendants have placed Defendant Blea's physical condition at issue in this case,

7

Officer Blea's privacy interest in his non-mental health medical records outweighs any slight relevance they might have.[3] At this time, the Court will not compel their disclosure.[4]

### C. Polygraph Results

Defendants represent in the privilege log submitted to the Court in camera that, once they redact the dates of birth and social security numbers, they are willing to disclose polygraph records as long as they are subject to a protective order. The Court agrees that these documents contain private information that should be subject to a protective order. Therefore, the Court orders the production of these documents subject to a protective order. Defendant may redact the Officers' personal identifier information prior to disclosure. If Plaintiff objects to this redaction, he should contact the Court's chambers to set up a telephonic conference so that the Court may discuss the issue with the parties.

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's Motion to Compel is GRANTED as to the Officers' polygraph and mental health records in Defendant's possession.

2. Plaintiff's Motion to Compel is DENIED as to Officer Blea's non-mental health medical records.

---

[3] The Court is also skeptical of the premise that a city has a constitutional duty to ensure that its police officers are faster than suspects who choose to ignore their commands to stop and instead choose to run away. True, except in rare situations, slow police officers cannot legally shoot a suspect to prevent that suspect from getting away. *Tenn. v. Garner*, 471 U.S. 1, 11 (1985). ("[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). But the shooting of fleeing suspects who pose no immediate threat is not a plainly obvious consequence of hiring police officers who cannot run fast. *See Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397 (1997) ("Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'").

[4] Plaintiff did not move to compel Officer Monfils' medical records or otherwise provide argument as to why these records were relevant to his claims. Accordingly, the Court will not address whether Defendants must produce Officer Monfils' medical records.

3. Any records disclosed pursuant to this order shall be disclosed in accordance with agreed upon terms and conditions of a protective order entered into by the parties and approved by the Court.

 /s/ Steven C. Yarbrough_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE